No. 2654.

## WILEY SCOTT *v.* THE STATE.

1. SWINDLING—INDICTMENT.—See the statement of the case for an indictment *held* sufficient to charge swindling.
2. SAME—CHARGE OF THE COURT—EVIDENCE.—The swindling was alleged to have been committed by means of a false written instrument and the false declaration of the accused that the names appearing to the same were genuine signatures. The trial court charged the jury in effect that before they could convict they must find that the signatures were on the instrument when it was delivered by the accused, and that he then falsely and fraudulently declared that they were genuine, and so induced the issuance of the draft. *Held*, that the instruction was correct in principle, and applicable to the charge in the indictment and the facts in evidence. But see the statement of the case for evidence upon which it is *held* that the verdict of guilty is contrary to both the instruction and the proof.

APPEAL from the District Court of Montgomery. Tried below before the Hon. James Masterson.

The charging part of the indictment reads as follows: "* * That heretofore, to wit, on the twentieth day of September, in the year of our Lord 1886, in the county of Montgomery, in the State of Texas, Wiley Scott did then and there, intending to cheat and defraud Hartley Free School Community No. 70, in and for Montgomery county, in the State of Texas, knowingly, fraudulently and deceitfully present to J. M. Lewis, who was then and there county judge in and for said county and State, and who was by virtue of his said official position then and there had the supervision of the disbursement of the funds belonging to the public free school communities of said county of Montgomery, in said State of Texas, which the said Wiley Scott then and there well knew, a certain false, fraudulent and deceitful written petition or request addressed to county judge of Montgomery county, requesting said official to appropriate sixty-one dollars and forty cents out of the funds of said school community to build a school house for said school community with the following names, to wit, 'Sine,' 'Thompson' and 'Hubert' attached thereto as signers, which the said Wiley Scott then and there falsely and fraudulently represented to the

said J. M. Lewis, county judge as aforesaid, to be the genuine signatures of Canby Sims, Henry Hubert and Joe Thompson, who were then and there trustees of said school communities, and as such were by law authorized to make such requests, which said false, fraudulent and deceitful written request or petition is in substance, words and figures as follows, to wit:

'To County Judge Montgomery County:

'We respectfully ask that sixty one & $\frac{40}{100}$ dollars be appropriated for building School House out of free school funds belonging to Hartley School Community No 70.

'Sine

'Hubert

'thompson

And the said Wiley Scott did then and there falsely, fraudulenly and deceitfully represent to the said J. M. Lewis, county judge as aforesaid, that said false, fraudulent and deceitful request or petition aforesaid, which the said Wiley Scott then and there produced and presented to the said J. M. Lewis, county judge as aforesaid, was the written request or petition of the trustees aforesaid of said school community; that said trustees aforesaid signed the same as such trustees, and the signatures attached to said false, fraudulent and deceitful petition or request were placed on the same by the trustees aforesaid as their signatures; that said trustees had authorized him, the said Wiley Scott, to receive from said county judge as aforesaid, any draft or order that said official, in compliance with said false pretended request, might draw on the funds of said Hartley school community aforesaid—all of which said representations then and there knowingly made by the said Wiley Scott were false, and the said Wiley Scott then and there knew that the same were false. In fact and in truth the said false, fraudulent and deceitful written petition or request was not the petition of the trustees of said Hartley free school community aforesaid; and in fact and in truth the trustees aforesaid of the said Hartley free school community had not signed the said false, fraudulent and deceitful written petition or request aforesaid, and the names aforesaid then and there appearing thereon were not in fact and in truth placed there by them; and in fact and in truth the trustees aforesaid had not authorized the said Wiley Scott to receive for them any draft or order

the county judge aforesaid, in compliance with said pretended, fraudulent and deceitful written petition or request, might draw on the funds belonging to the said school community; and the said J. M. Lewis, county judge as aforesaid, then and there believed that the said pretended, false, fraudulent and deceitful written request or petition, then and there produced and presented to him by the said Wiley Scott, was in fact and in truth a bona fide petition of the trustees aforesaid of the Hartley public free school community aforesaid for his approval of an appropriation for sixty-one dollars and forty cents to build a school house for said community, and then and there believed the false, fraudulent and deceitful representations aforesaid, then and there knowingly and falsely made to him by the said Wiley Scott aforesaid to be then and there true; and the said Wiley Scott, then and there, by the said false and fraudulent and deceitful pretense, pretenses and representations so made to the said J. M. Lewis, county judge as aforesaid, did unlawfully and fraudulently acquire from the said J. M. Lewis, county judge as aforesaid, an order signed by him as county judge aforesaid, directing the Treasurer of Montgomery county, State of Texas, who was then and there by virtue of his official position the custodian of the funds belonging to the communities of the public free schools in said county and State, to pay to bearer or any one of the trustees, sixty one & $\frac{40}{100}$ dollars out of the funds belonging to the said Hartley free school community aforesaid, which said order is in words, substance and figures as follows, to wit:

'The Treasurer of Montgomery County is respectfully requested to pay the above amount $61.40 to the bearer or any one of the trustees of Hartley School Community No. 70, and charge the same to said Community.

'J. M. LEWIS,<br>'Co. Judge, Montgomery Co.'

Which the said J. M. Lewis then and there signed and delivered to the said Wiley Scott, believing that said false, fraudulent and deceitful written petition or request, then and there produced and presented to him by the said Wiley Scott, was a genuine and bona fide request and petition of the aforesaid trustees of the said Hartley Free School Community in compliance therewith, and he would not then and there have signed

and delivered to the said Wiley Scott said order if he had not then and there believed that the said false, fraudulent and deceitful request or petition was the bona fide request or petition of the trustees of said community, and that the false, fraudulent and deceitful representations then and there made to him by the said Wiley Scott were true; which said order is an instrument in writing conveying and securing a valuable right of the value of sixty-one dollars and forty cents, which he, the said Wiley Scott, then and there so unlawfully and fraudulently acquired, with the intent to appropriate the same to the use and benefit of him, the said Wiley Scott, and with the wilful design to cause an injury to the said Hartley School Community No. 70 aforesaid; and the grand jury aforesaid, upon their oaths aforesaid, do say and present in said court that the said Wiley Scott, at the time and place aforesaid, and in the manner and by the means aforesaid, did commit the offense of swindling, contrary to the statute in such cases made and provided, and against the peace and dignity of the State." The trial of the defendant resulted in his conviction, and his punishment was assessed at a term of two years in the penitentiary.

The State introduced in evidence the "request," or "petition," as it is designated and set out in the indictment, and the order of the county judge, as the same appears transcribed in the indictment, and then proved by the trustees of the Hartley school community, viz.: Sims, Hubert and Thompson, that neither of them signed the same, nor authorized any person to sign the same for them.

Ex-County Judge Lewis was next introduced as a witness by the State. He testified, in substance, that the body of the "petition," or request, as appears by the handwriting, was written by him. He did not know who signed the names of Sims, Hubert and Thompson to the same. The witness also wrote the order on the county treasurer, as the same appears in the indictment. He customarily wrote such petitions for the negro trustees of negro school communities, or the patrons thereof, and when properly signed or authenticated by the trustees, or he was satisfied of their genuineness, he drew his official orders on the same. He remembered that defendant afterwards presented him the petition, and while he did not think he would have drawn the check on it if not signed, he was now unable to say that the purported signatures of the trustees were then on it. It was, in fact, as probable that they

were not as that they were.    He could not now say what, if
any, representations were made to him by defendant about
those signatures, or whether he was induced by defendant's
representations to issue the check or order.    He would not,
however, have issued it if he was not satisfied in his own mind
that the money was wanted by the trustees for the purpose
stated in the petition.

It was further proved that the defendant sold the order to one
Caldwell, and that the money called for in it was paid to Cald-
well by the county treasurer. The defense offered no evidence.

No brief on file for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE.    We think the indictment is a good one, as
it alleges every element of the offense of swindling. and sets
out in *haec verba* the instrument in writing by means of which
it is alleged the offense was accomplished.

Among other instructions given the jury was the following,
given at defendant's request: "Unless the proof satisfies you
beyond a fair and reasonable doubt that the signatures to the.
document in evidence before you were there at the time of its
presentation to the county judge, and that defendant's false
and fraudulent declaration that they were genuine signatures
induced the issuance of the draft in question, then the defend-
ant is entitled to be acquitted." This instruction was appli-
cable to the charge in the indictment and to the facts in evi-
dence, and is correct in principle.    But, in our opinion, the ver-
dict is contrary to said instruction, and unwarranted by the
evidence.    It appears from the testimony of Lewis, the county
judge, that he had no definite recollection about said signa-
tures, as to whether or not they were on the document when
it was presented to him.    He states that it was as probable
that they were not, as that they were on said paper at said
time.    He states further that he does not remember any state-
ment or declaration made to him by defendant in regard to said
signatures or said document.

Because. in our opinion, the verdict is against the law and
unsupported by the evidence, the judgment is reversed and the
cause remanded.

*Reversed and remanded.*